1  **KAZEROUNI LAW GROUP, APC**
   David J. McGlothlin, Esq. (SBN: 253265)
2  david@kazlg.com
   Mona Amini, Esq. (SBN: 296829)
3  mona@kazlg.com
   245 Fischer Avenue, Unit D1
4  Costa Mesa, California 92626
   Telephone: (800) 400-6808
5  Facsimile: (800) 520-5523

6  *Attorneys for Plaintiff,*
   *Mabel Hanken*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 **MABEL HANKEN**,                    | **Case No.:**

11              Plaintiff,             | **COMPLAINT FOR VIOLATIONS OF:**

12      vs.

13 **NATIONAL CREDIT ADJUSTERS,**       | **(1)  THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692, ET SEQ.;**
   **L.L.C.; KWIKCASH, INC.; AND**
14 **EQUIFAX INFORMATION**
   **SERVICES, LLC**,                   | **(2)  THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788, ET SEQ.**
15
16              Defendants.            | **(3)  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.**

17
18                                     | **(4)  BREACH OF CONTRACT; AND**
19
20                                     | **(5)  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
21
22
23                                     | **JURY TRIAL DEMANDED**
24

25 ///

26 ///

27 ///

28 ///

- 1 -
COMPLAINT

## **INTRODUCTION**

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

3. The California legislature has also found that the collection of debt purchased by debt buyers has become a significant focus of public concern due to the adequacy of documentation required to be maintained by the industry in support of collection activities and litigation. In that regard, setting specific documentation and process standards will protect consumers, provide needed clarity to courts, and establish clearer criteria for debt buyers and the collection industry.

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

4. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

5. Plaintiff MABEL HANKEN ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of NATIONAL CREDIT ADJUSTERS, L.L.C. ("NCA"), KWIKCASH, INC. ("Kwikcash"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), (collectively as "Defendants"), with regard to Defendant's Kwikcash breach of contract, attempts by Defendants NCA and Kwikcash to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and with regard to Defendants NCA and Equifax's erroneous and inaccurate reporting of Plaintiff's credit information and Defendants NCA and Equifax's failure to properly investigate Plaintiff's disputes, and this conduct caused Plaintiff damages.

6. Defendants NCA and Equifax failed to properly investigate Plaintiff's disputes and update and correct Plaintiff's credit information, damaging Plaintiff's creditworthiness and causing Plaintiff further injury.

7. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which

1    Plaintiff alleges on personal knowledge.

2  8.  While many violations are described below with specificity, this Complaint

3      alleges violations of the statute cited in its entirety.

4  9.  Any violations by Defendants were knowing, willful, and intentional, and

5      Defendant did not maintain procedures reasonably adapted to avoid any such

6      violation.

7  10. Unless otherwise indicated, the use of Defendants name in this Complaint includes

8      all agents, employees, officers, members, directors, heirs, successors, assigns,

9      principals, trustees, sureties, subrogees, representatives, and insurers of

10     Defendant's named.

11                          **JURISDICTION AND VENUE**

12 11. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. §

13     1692(k), 15 U.S.C. §§ 1681, et seq.; and 28 U.S.C. § 1367 for substantially related

14     state law claims arising from a common nucleus of facts.

15 12. This action arises out of Defendant Kwikcash's breach of contract, Defendant

16     NCA's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et

17     seq. ("FDCPA"), Defendants NCA and Kwikcash's violations of the Rosenthal

18     Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. ("RFDCPA"),

19     and Defendants NCA and Equifax's violations of the Fair Credit Reporting Act,

20     15 U.S.C. §§ 1681, et seq.(the "FCRA").

21 13. Because Defendants conduct business within the State of California, personal

22     jurisdiction is established.

23 14. Venue is proper in the United States District Court, Central District of California

24     pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the

25     within this judicial district; (ii) the conduct and harm complained of herein

26     occurred within this judicial district; and (iii) Defendants conducted business

27     within this judicial district at all times relevant.

28

## **PARTIES**

15. Plaintiff is a natural person who resides in the County of Los Angeles, State of California, from whom a Defendants NCA and Kwikcash sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) as well as 15 U.S.C. § 1681a(c), and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

16. Defendant Kwikcash, is a creditor that in the ordinary course of business, regularly, on behalf of themselves or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c) and 15 U.S.C. § 1692a(6).

17. Defendant Kwikcash is, and at all times mentioned herein was, a limited company registered and formed under the laws of the State of California with a primary place of business and/or headquarters is located in Irvine, California. Plaintiff further alleges, at all times relevant herein, Defendant conducted business in the State of California and within this judicial district.

18. Defendant NCA is, and at all times mentioned herein was, a limited company registered and formed under the laws of the State of Kansas with a primary place of business and/or headquarters is located in Hutchinson, Kansas. Plaintiff further alleges, at all times relevant herein, Defendant conducted business in the State of California and within this judicial district.

19. Defendant NCA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

20. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as

1   those terms are defined by Cal. Civ. Code § 1788.2(f) and a "debt" as that term is

2   defined by 15 U.S.C. § 1692a(5).

3   21. Defendant Equifax is, and at all times mentioned herein was, a limited company

4   registered and formed under the laws of the State of Georgia with a primary place

5   of business and/or headquarters is located in Atlanta, Georgia. Plaintiff further

6   alleges, at all times relevant herein, Equifax conducted business in the State of

7   California and within this judicial district.

8   22. Defendant Equifax regularly assembles and/or evaluates consumer credit

9   information for the purpose of furnishing consumer reports to third parties and

10  uses interstate commerce to prepare and/or furnish the reports.  Equifax is a

11  "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f),

12  doing business with its principal places of business in Atlanta, Georgia.

13  23. Unless otherwise indicated, the use of Defendants' names in this Complaint

14  includes all agents, employees, officers, members, directors, heirs, successors,

15  assigns, principals, trustees, sureties, subrogees, representatives, and insurers of

16  the named Defendant.

## **FACTUAL ALLEGATIONS**

18  24. Plaintiff is an individual residing within the County of Los Angeles, in the State of

19  California.

20  25. Plaintiff is informed and believes, and thereon alleges, that at all times relevant,

21  Defendants conducted business in the State of California.

22  26. Sometime before January 2021, Plaintiff allegedly incurred financial obligations

23  to Defendant Kwikcash that were money, property, or their equivalent, which was

24  due or owing, or alleged to be due or owing, from a natural person to another

25  person (the "Debt") and were therefore a "debt" as that term is defined by 15

26  U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(d), and a "consumer debt" as that

27  term is defined by Cal. Civ. Code § 1788.2(f).

28  27. Sometime thereafter, but before January 2015, Plaintiff allegedly fell behind in the

COMPLAINT

1  payments owed on the Debt.

2  28. On or around January 3, 2015, Kwikcash filed a lawsuit against Plaintiff in the

3  Superior Court of California, County of Orange, Case No. 30-2015-00764148-CL-

4  CL-CJC ("State Court Matter"), alleging Plaintiff owed a debt in the amount of

5  $6,990.00 to Kwikcash.

6  29. On or around January 2016 Plaintiff and Defendant Kwikcash entered into a

7  settlement agreement ("Agreement") whereby Defendant Kwikcash agreed to

8  forever waive Plaintiff from any claim Defendant Kwikcash may have on the Debt

9  and the State Court Matter, delete the Debt from Plaintiff's credit reports, and

10  dismiss the State Court Matter with prejudice.

11  30. Plaintiff timely fulfilled all of her obligations under the Agreement.

12  31. On or around January 17, 2016, Defendant Kwikcash filed a Request for

13  Dismissal with prejudice of the State Court Matter in its entirety.

14  32. On or around January 19, 2016, Superior Court of California, County of Orange

15  entered the dismissal of the State Court Matter with prejudice.

16  33. Several years later, on or around March 2021, Plaintiff discovered NCA and

17  Kwikcash were reporting the same Debt from the State Court Matter on her credit

18  reports. Specifically, NCA and Kwikcash were reporting that $6,990.00 was owed

19  on the account.

20  34. Defendants NCA and Kwik cash reported, or caused to be reported, inaccurate

21  information and derogatory information on Plaintiff's credit reports, including but

22  not limited to the representation that the account was "past due" and that a balance

23  was owed on the account.

24  35. Plaintiff properly disputed Defendants' reporting of the account, but Defendants

25  continued to report inaccurate and derogatory information on Plaintiff's credit

26  reports, as detailed below.

27

28

**Equifax and NCA Misreported Credit Information**

36. At all times relevant, Plaintiff is a natural person residing within the State of California.

37. At all times relevant, Defendant conducted business within the State of California.

38. In an Equifax credit report from around March 2021, Equifax and NCA inaccurately reported the Kwikcash account, information about charge off, collection status, past due amount/balance of $6,990.00. This was inaccurate since Plaintiff and Defendant Kwikcash had entered into the Agreement in January 2016, which would forever waive the Debt and delete the tradeline associated with the Debt from Plaintiff's credit reports. Therefore, NCA and Equifax's reporting of the Kwikcash account and that the account was past due with a balance owed was inaccurate.

39. On or about April 7, 2021, Plaintiff disputed NCA's and Equifax's reporting regarding the Debt pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by NCA and reported by Equifax.

40. Specifically, Plaintiff sent a letter, via certified mail with return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected on Plaintiff's credit report.

41. On information and belief, upon receiving the dispute letter, Equifax timely notified NCA of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

42. NCA was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

43. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i

44. On May 8, 2021, Equifax sent notice to Plaintiff of the dispute results from NCA and Equifax.

45. A reasonable investigation by these NCA and Equifax would have indicated that Plaintiff's Kwikcash account was not past due or delinquent and that no balance remained owed.

46. NCA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

47. NCA and Equifax verified and re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, NCA and Equifax re-reported the account in its totality, and a past due amount of $6,990. This was inaccurate since Plaintiff's Debt was to be waived and the account was to be deleted from her credit reports and pursuant to the Agreement she did not owe the Debt, $6,990, NCA and Equifax were reporting. Plaintiff fully performed her obligations under the Agreement. Therefore, NCA and Equifax's reporting that the account was past due and delinquent with a balance owed was inaccurate.

48. NCA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

49. NCA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

50. Due to NCA and Equifax's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

51. Plaintiff's continued efforts to correct NCA's and Equifax's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with NCA and Equifax were fruitless.

52. NCA and Equifax's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

53. Also as a result of NCA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation invasion of privacy, out-of-pocket expenses in challenging NCA and Equifax's inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

54. By inaccurately reporting account information after notice and confirmation of their errors, NCA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i in violation of the FCRA.

### *Inaccurate Credit Reporting and Reporting Standards*

55. NCA and Equifax's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

56. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

57. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

58. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

59. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting inaccurate information regarding Plaintiff's Account.

60. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

61. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    A. credit or insurance to be used primarily for personal, family, or household purposes;

    B. employment purposes; or

    C. any other purpose authorized under section 1681b.

62. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

63. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

64. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports

65. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

66. NCA and Equifax's departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer damages from reduced FICO credit scores.

***Credit Scoring***

67. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

68. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

69. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

70. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

71. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

72. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

73. Here, reporting the account and inaccurately reporting the Kwikcash account as past due with a balance due when it is in fact closed and should be deleted adversely affects Plaintiff's FICO score.

74. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

75. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/

### Defendants NCA and Equifax's Failures and Plaintiff's Damages

76. It is inaccurate to report an account as open and delinquent with a balance due when in fact the Kwikcash account was closed with no balance remaining owed and should be reported as such.

77. Reporting that an account is still owed and delinquent is detrimental to a consumer's credit reputation.

78. As evidenced by NCA and Equifax's failures to correct the reporting of the Kwikcash account despite receiving accurate information from Plaintiff showing the account was closed and paid in full, NCA and Equifax each failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

79. As evidenced by the inaccurate re-reporting, NCA and Equifax each failed to conduct an investigation or reinvestigation upon receipt of Plaintiff's dispute with respect to the disputed information related to the account as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

KAZEROUNI LAW GROUP, APC

80. NCA and Equifax each failed to review all relevant information and documents provided by Plaintiff with her disputes to NCA and Equifax, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

81. Due to NCA and Equifax's failure to reasonably investigate, NCA and Equifax each further failed to correct and update Plaintiff's credit information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

82. NCA and Equifax continued inaccurate and derogatory reporting of the account in light of their knowledge of the errors was knowing willful. Plaintiff is, accordingly, eligible for statutory damages.

83. Also, as a result of NCA and Equifax continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, invasion of privacy, fear of credit denials, out-of-pocket expenses in challenging NCA and Equifax's inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and Plaintiff has suffered loss of personal time and worry, fear, stress, anxiety, and sleeplessness.

84. Creating the false impression of the account as open, having a delinquency, and/or a balance remaining owed creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports engaged in judgment-based lending.

85. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

86. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

87. By inaccurately reporting account information after notice from Plaintiff, NCA and Equifax each failed to take the appropriate measures in violation of the FCRA and as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

### NCA Unfair Debt Collection

88. These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person by reason of a consumer credit transaction and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d) and 15 U.S.C. 1692a(5) and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

89. The Debt NCA reported on Plaintiff's credit report was a fully and forever waive pursuant to the Agreement and the dismissal of the State Action Matter.

90. Defendant NCA's reporting constitutes a collection attempt, on an account that it was not allowed to report nor collect on. Through this conduct, Defendant violated 15 U.S.C. § 1692d., 15 U.S.C. § 1692e. and 15 U.S.C. § 1692f.

91. Through all the above-mentioned conduct, Defendant engaged in conduct the natural consequence is which to harass, oppress, or abuse any person in violation of 15 U.S.C. § 1692d. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

92. Through the above conduct, Defendant violated 15 U.S.C. § 1692e(2) by validating and reporting the Debt on Plaintiff's Equifax credit report thus containing a false impression of the character, amount, and legal status of the Debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

93. Through the above conduct, Defendant violated 15 U.S.C. § 1692e(8) by communicating Plaintiff's credit information which it knew was to be false. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

94. Through the above conduct, Defendant violated 15 U.S.C. § 1692f by using unfair

KAZEROUNI LAW GROUP, APC

or unconscionable means to collect or attempt to collect a debt, a debt that it was not entitled to pursuant to the Agreement and dismissal. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

95. Through the above conduct, Defendant violated 15 U.S.C. § 1692f(1) by validating and reporting the Debt on Plaintiff's Equifax credit report in an attempt to collect an amount it was not authorized to collect by the agreement creating the debt or permitted by law. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

96. Through all the above-mentioned conduct, Defendant took action against Plaintiff concerning the alleged debt in violation of the statutes discussed above. Specifically, Defendant has violated 15 U.S.C. §§ 1692e; and 1692f. These sections are incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; therefore, Defendant has also violated Cal. Civ. Code § 1788.17.

97. As a result of Defendant's unfair, oppressive, and abusive conduct in connection with their debt collection activity, Plaintiff has suffered mental anguish by way of stress, frustration, and anxiety over the fact that Defendant continued its collection communications to Plaintiff despite receiving the C&D Letter requesting Defendant to cease and desist communication with Plaintiff.

**Kwikcash's Unfair Debt Collection**

98. Kwikcash and Plaintiff entered into the above-described Agreement in or around January 2016 whereby Kwikcash agreed to forever waive Plaintiff from any claim Kwikcash may have on the Debt and the State Court Matter, delete the Debt from Plaintiff's credit reports, and dismiss the State Court Matter with prejudice.

99. On or around January 17, 2016, Defendant Kwikcash filed a Request for Dismissal with prejudice of the entire State Court Matter and thus on or around January 19, 2016, Superior Court of California, County of Orange entered the

1  dismissal of the State Court Matter.

2  100. After January 19, 2016, at the latest, Plaintiff did not owe Defendant any amount.

3  The Debt was waived and all claims waived, leaving no balance owed.

4  Additionally the Kwikcash tradeline was to be deleted from Plaintiff's credit

5  reports.

6  101. Despite the Agreement, Kwikcash improperly transferred or assigned the Debt to a

7  debt collector, NCA, to collect on an invalid debt.

8  **15 U.S.C. § 1692c(c)**

9  102. The Rosenthal Act incorporates sections of its federal counterpart, Fair Debt

10  Collection Practices Act ("FDCPA"), through Cal. Civ. Code § 1788.17. This

11  incorporation includes 15 U.S.C. § 1692e(c), which states as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1)  The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
> (2)  The false representation of—(A)the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> (3)  The threat to take any action that cannot legally be taken or that is not intended to be taken . . .
>  i.    (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed . . .

22  103. The purpose of Kwikcash's reporting was to collect on the Debt disregarding that

23  it was not permitted to do so pursuant to its legal obligations under the Agreement.

24  Kwikcash misrepresented the debt and gave a false impression of the character,

25  amount, and legal status of the Debt. For the foregoing reasons, Defendant

26  violated § 1692e.

27

28

104. Because 15 U.S.C. § 1692e is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17, Defendant has also violated Cal. Civ. Code § 1788.17 of the Rosenthal Act.

**15 U.S.C. § 1692d**

105. The Rosenthal Act also incorporates 15 U.S.C. § 1692d, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

106. By transferring the Debt to NCA thus allowing the persecution of the Debt, Kwikcash engaged in conduct the natural consequence is which to harass, oppress, or abuse any person in violation of 15 U.S.C. § 1692d.

107. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17. Consequently, Defendant has also violated Cal. Civ. Code § 1788.17.

**15 U.S.C. § 1692f**

108. The Rosenthal Act also incorporates 15 U.S.C. § 1692f, which provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

109. By transferring the Debt to NCA to allow the collection on an invalid and waived debt, Defendant has engaged in conduct in violation of 15 U.S.C. § 1692f by using unfair or unconscionable means in attempt to collect an alleged debt from Plaintiff.

110. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17. As a result, Defendant has violated Cal. Civ. Code § 1788.17.

111. Through the above-alleged conduct, Defendant has engaged in conduct which constitutes numerous violations of the Rosenthal, Cal. Civ. Code §§ 1788, et seq.

112. As a result of Defendant's unfair, oppressive, and abusive conduct in connection with its debt collection activity, Plaintiff has suffered invasion of privacy and mental anguish by way of stress, annoyance, fear, and feelings of despair over

Defendant's persisting collection calls to Plaintiff in violation of the Rosenthal Act, as alleged in greater detail above.

### Kwikcash's Breach of Contract

13. Plaintiff and Defendant agreed that Kwikcash would forever waive the Debt, delete the Debt from Plaintiff's credit reports, and dismiss the State Court Matter with prejudice.

14. Plaintiff met all of her obligations under the Agreement; however, Kwikcash breached its obligations to Plaintiff under the Agreement.

15. As stated above, the Debt was reported on Plaintiff's credit reports with the same balance of $6,990 being owed, which was already waived under the Agreement and the State Court Matter claiming the Debt was owed was dismissed with prejudice.

16. Kwikcash failed to perform as promised under the Agreement when it transferred the waived debt and allowed it to be reported on Plaintiff's credit reports, thereby breaching the Plaintiff and Kwikcash's contract. As a result of its conduct, Kwikcash also breached its implied covenant of good faith and fair dealing.

17. As a result of Kwikcash's actions, omissions, and failures to act, Plaintiff has suffered actual and consequential damages, and is entitled to recover actual, consequential, and punitive damages against Kwikcash, including her emotional damages and mental anguish, stress, embarrassment, and humiliation, each in an amount to be determined at trial.

## CAUSES OF ACTION

### COUNT I

#### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
#### 15 U.S.C. §§ 1692, ET SEQ. (FDCPA)
#### (AGAINST NCA ONLY)

18. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

19. The foregoing acts and omissions constitute numerous and multiple violations of

1   the FDCPA.

2   20. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any

3   actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages for a

4   knowing or willful violation in the amount up to $1,000.00 pursuant to 15 U.S.C.

5   § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §

6   1692k(a)(3) from Defendant NCA.

7   ### COUNT II

8   **VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
    **CAL. CIV. CODE §§ 1788, ET SEQ. (RFDCPA)**
9   **(AGAINST NCA AND KWIKCASH ONLY)**

10  21. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

11  though fully stated herein.

12  22. The foregoing acts and omissions constitute numerous and multiple violations of

13  the RFDCPA.

14  23. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any

15  actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a

16  knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ.

17  Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ.

18  Code § 1788.30(c) from Defendants NCA and Kwikcash.

19  ### COUNT III

20  **VIOLATION OF THE FAIR CREDIT REPORTING ACT**
    **15 U.S.C. §§ 1681, ET SEQ. (FCRA)**
21  **(AGAINST NCA AND EQUIFAX ONLY)**

22  24. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

23  though fully stated herein.

24  25. The foregoing acts and omissions constitute numerous and multiple willful,

25  reckless or negligent violations of the FCRA, including but not limited to each and

26  every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

27  26. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to

28  actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1);

statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants NCA and Equifax.

127. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants NCA and Equifax.

### COUNT IV

### BREACH OF CONTRACT

### (AGAINST KWIKCASH ONLY)

128. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

129. Plaintiff and Kwikcash entered into a contract, the Agreement, where Kwikcash would forever waive Plaintiff from any claim Kwikcash may have regarding the Debt and the State Court Matter, delete the Debt from Plaintiff's credit reports, and dismiss the State Court Matter with prejudice.

130. Plaintiff timely performed all of her obligations under the contract.

131. Nevertheless, Kwikcash did not perform based on the agreed terms as shown by the transfer of the Debt and account to NCA, as well as the reporting of the Debt and account on Plaintiff's credit reports.

132. As a result of Kwikcash's breach of contract, Plaintiff suffered actual damages in an amount to be determined at trial, plus loss of use and consequential damages in an amount to be determined at trial.

133. Kwikcash's conduct was oppressive, malicious, and fraudulent such that an award of punitive damages is justified in order to punish Kwikcash and deter it and others from such conduct.

**COUNT V**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(AGAINST KWIKCASH ONLY)**

134. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

135. As alleged above, Plaintiff and Kwikcash entered into a contract, the Agreement. Plaintiff did all of the things that the contract required Plaintiff to do and all conditions required for Kwikcash's performance had been met. As a result of Kwikcash's failure to perform as promised, Plaintiff did not receive the benefits under the parties' contract.

136. Every contract contains an implied covenant requiring that neither party act to disrupt the other's ability to enjoy the benefit of the bargain. Furthermore, where a contract provides one of the parties with discretion or sole authority to carry out obligations under the agreement for the benefit of the other party, the party enjoying such discretion and authority may not abuse it or exercise it in such a manner so as to deprive the other party of the benefits of the contract.

137. As alleged above, Kwikcash did not act fairly and in good faith with regard to its agreement and transaction with Plaintiff. Kwikcash breached the implied covenant of good faith and fair dealing by, among other things, failing to make a good faith effort to fulfill contractual obligations, express and implied promises, including its misrepresentations of the initial contract price and the unauthorized, additional amount charged to Plaintiff for Kwikcash's services, and, later, failing to meet its obligation to act in good faith to uphold the terms of the parties' agreement by delivering Plaintiff's personal belongings.

138. By failing to meet its obligation to in good faith attempt to uphold the intention and spirit of the contract, Kwikcash breached the implied covenant of good faith and fair dealing.

139. As a direct result of Kwikcash's conduct, Plaintiff suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

### **First Cause of Action**

### **Violations of the FDCPA, 15 U.S.C. §§ 1692, *et seq*.**

- an award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1), against NCA and Kwikcash;

- an award of statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A), against NCA and Kwikcash;

- an award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), against NCA and Kwikcash;

- any and all other relief that this Court deems just and proper.

### **Second Cause of Action**

### **Violations of the RFDCPA, Cal. Civ. Code §§ 1788, *et seq*.**

- an award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against NCA and Kwikcash;

- an award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against NCA and Kwikcash;

- an award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against NCA and Kwikcash; and

- any and all other relief that this Court deems just and proper.

### **Third Cause of Action**

### **Violations of the FCRA, 15 U.S.C. §§ 1681, *et seq*.**

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

1   • An award of costs of litigation and reasonable attorney's fees, pursuant to 15
2   U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for
3   each incident of negligent noncompliance of the FCRA; and
4   • Any other relief the Court may deem just and proper.

### Fourth Cause of Action

### Breach of Contract

7   • Actual damages in an amount to be determined at trial;
8   • Consequential damages in an amount to be determined at trial;
9   • Punitive damages in an amount sufficient to punish Defendant and to deter
10  others from like conduct;
11  • Upon finding of a breach of contract, attorney's fees and costs;
12  • Any other relief deemed just and proper.

### Fifth Cause of Action

### Breach of the Implied Covenant of Good Faith and Fair Dealing

15  • Actual and consequential damages, including damages for emotional and
16  mental distress and prejudgment interest, for Defendant's bad faith breach of
17  duty of good faith and fair dealing, in an amount to be determined at trial;
18  • Upon a finding of bad faith, attorney's fees and costs;
19  • Any other relief deemed just and proper.

### **TRIAL BY JURY**

21  140.  Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Respectfully submitted,

Dated: January 7, 2022                      **KAZEROUNI LAW GROUP, APC**

By:  _____s/ Mona Amini_____
        David J. McGlothlin, Esq.
        Mona Amini, Esq.
        *Attorneys for Plaintiff*